**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RICHARD PAUL HOUGH,** | § | **CIVIL ACTION NO.** |
| **PETER J. GAUNT, AND** | § | **3:23-CV-01279-JWD-EWD** |
| **THE ESTATE OF LARRY KYZER,** | § | |
| | § | **DISTRICT JUDGE** |
| *Plaintiffs*, | § | **HON. JOHN W. deGRAVELLES** |
| | § | |
| **VERSUS** | § | |
| | § | **MAGISTRATE JUDGE** |
| **ORBITAL ENGINEERING, INC.,** | § | **HON. ERIN WILDER-DOOMES** |
| | § | |
| *Defendant.* | § | |

---

**PLAINTIFFS' SECOND AMENDED COMPLAINT**
**FOR DECLARATORY JUDGMENT**

---

Plaintiffs Richard Paul Hough, Peter J. Gaunt, and the Estate of Larry Kyzer (collectively "Plaintiffs") hereby file this Complaint for Declaratory Judgment and move this Honorable Court, pursuant to Article 1871 of the Louisiana Code of Civil Procedure and/or the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 - 2202, to enter a Declaratory Judgment against Defendant, Orbital Engineering, Inc. ("Orbital"), and in support thereof state as follows:

## I. THE PARTIES & SERVICE

1. Richard Paul Hough, an individual **formerly** residing in the Parish of East Baton Rouge, Louisiana at the time of the events giving rise to this lawsuit, is a resident and **domiciled in** Marathon, Florida.

2. Peter J. Gaunt, an individual **formerly** residing in the Parish of East Baton Rouge, Louisiana at the time of the events giving rise to this lawsuit, is a resident and **domiciled in** Gulf Breeze, Florida.

3. At the time of his death, Larry Kyzer was domiciled in the Parish of East Baton Rouge. His widow, Margaret Carolyn Kyzer, is **domiciled in** Houston, Texas, and a representative of his estate.

4. Orbital is a corporation formed in the State of Pennsylvania **and has its principal place of business in the State of Pennsylvania.** It is registered to do business in the State of Louisiana and can be served with process through its registered agent, Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

## II.   JURISDICTION

**A.    The Parties Are Completely Diverse.**

5. Mr. Hough is a resident of Marathon, Florida. Because his place of residency, Florida, is *prima facie* evidence of his domicile, Mr. Hough is deemed to be a citizen of the State of Florida.

6. Mr. Gaunt is a resident of Gulf Breeze, Florida. Because his place of residency, Florida, is *prima facie* evidence of his domicile, Mr. Gaunt. is deemed to be a citizen of the State of Florida.

7. The representative of Mr. Kyzer's estate, Mrs. Kyzer, is a resident of Houston, Texas. Because her place of residency, Texas, is *prima facie* evidence of her domicile, Mrs. Kyzer is deemed to be a citizen of the State of Texas.

8. Orbital was incorporated in the State of Pennsylvania, and its principal place of business is in the State of Pennsylvania. Orbital is therefore deemed to be a citizen of Pennsylvania.

9. None of the Plaintiffs are citizens of the same state as Orbital (Pennsylvania). Therefore, complete diversity exists between the Parties for purposes of diversity jurisdiction.

**B.    The Amount in Controversy Is Satisfied Because It Exceeds $75,000.**

10. As will be discussed in depth *infra,* Plaintiffs are seeking damages flowing from Defendant's breach of its contractual obligations to them in the amount of $995,962.00, plus interest. These damages exceed the amount in controversy requirement of $75,000.00, upon which jurisdiction is based. 28 U.S.C. §1332.

### III.   VENUE

11. This Court has jurisdiction over Orbital as it has consented to personal jurisdiction in Louisiana pursuant to the forum selection clause in the Membership Interest Purchase Agreement executed between Orbital and the Plaintiffs. **Exhibit A, ¶** 12(h). "All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code Art. 3540. "Federal law determines the enforceability of a forum selection clause and presumes it is valid." *Amedisys Western, LLC v. Bartel,* Civil Action No. 14 658–SDD–SCR, 2015 WL 1922643, at * 3 (M.D. La. Apr. 27, 2015) (citing *Haynesworth v. The Corporation,* 121 F.3d 956, 962 (5th Cir. 1997); *Afram Carriers, Inc. v. Moeykens,* 145 F.3d 298, 301 (5th Cir. 1998); *Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10–15, 92 S. Ct. 1907, 1913 16 (1972)).

12. In addition, a case or actual controversy within this Court's jurisdiction exists between the Parties concerning their respective rights, duties, and obligations regarding indemnification.

13. This Court is authorized to declare the rights of the Parties in this case pursuant to Article 1871 of the Louisiana Code of Civil Procedure and/or the Federal Declaratory Judgments Act. 28 U.S.C. §§ 2201 - 2202.

14. Given that a substantial part of the events giving rise to this action occurred in Louisiana, specifically in the Parish of East Baton Rouge, venue in the Middle District of Louisiana is appropriate. 29 U.S.C. § 1391(b)(2). The contract executed by the Parties, which forms the basis of this declaratory judgment action, was signed and executed in Baton Rouge by Plaintiffs, three (3) Louisiana residents at the time, and the sale that was the subject of the contract closed in Baton Rouge. The allegations in the lawsuit giving rise to Defendant's indemnification demand concern the operations of a Louisiana company (H&K Engineering).

## IV.    NATURE OF THE ACTION

15. This action arises out of a controversy between Plaintiffs and Orbital regarding the Membership Purchase Agreement ("MIPA") entered into on February 8, 2021. *See* **Exhibit A.**

16. Plaintiffs bring this action for declaratory judgment pursuant to Article 1871 of the Louisiana Code of Civil Procedure and/or the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 – 2202 to declare the rights and obligations between the Parties to the MIPA.

17. These rights and obligations relate to Orbital's demand that Plaintiffs indemnify it for Orbital's unilateral settlement of the lawsuit styled *Lance Ledet, Individually and for Others Similarly Situated v. H&K Engineering, LLC and Orbital Engineering, Inc.,* Case No. 2:22-cv-01324-CRE, which was filed on September 15, 2022, in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division.

## V.    FACTUAL BACKGROUND

**A.    The Membership Purchase Agreement ("MIPA").**

18. H&K Engineering LLC ("H&K Engineering") is a multi-discipline consulting engineering firm that offers mechanical, piping, electrical, control systems, civil and structural, marine, and model integration services to clients in the United States. It provides a wide spectrum

4

of engineering, procurement, and construction management (EPCM) services to the refining, chemical, and pulp and paper industries, in addition to providing laser scanning services.

19.     Experienced in the areas of consulting, engineering, procurement, and technology applications, H&K Staffing Services LLC ("H&K Staffing") provides in-plant workers on a staffing basis to plants all over the country. It provides services in the areas of engineering, staffing, project management, commissioning, construction management, and procurement.

20.     Orbital partners with the industrial sector to provide full-service solutions in engineering and design, construction management and quality assurance/quality control, safety, and asset integrity services. It provides its services to the utilities, downstream (refineries and chemical), midstream (oil and gas), and metals industries, in addition to the infrastructure sector.

21.     Mr. Hough, a former member of H&K Engineering and H&K Staffing, held a 40% interest in the companies. **Exhibit A, ¶** A.

22.     Mr. Gaunt, also a former member of H&K Engineering and H&K Staffing, held a 20% interest in the companies. **Exhibit A, ¶** A.

23.     Upon the death of Larry Kyzer, the Estate of Larry Kyzer became the assignee of Mr. Kyzer's 40% interest in H&K Engineering and H&K Staffing. **Exhibit A, ¶** B.

24.     Plaintiffs decided to sell their respective interests in H&K Staffing and H&K Engineering to Orbital, and on January 1, 2021, the Parties closed on the sale.

25.     On February 8, 2021, the Parties executed a MIPA to effectuate the sale's terms, which were to be effective as of January 1, 2021 (the closing date). **Exhibit A, ¶** 2.

26.     Pursuant to the MIPA, Orbital purchased 100% of the total authorized and outstanding membership interest in H&K Engineering and H&K Staffing ("the Membership Interest"). **Exhibit A, ¶** 1.

27. The consideration Orbital was to pay for the purchase of the Membership Interest was set forth in Paragraph 2 of the MIPA, and it was calculated based on an initial payment, earn out payment, and working capital adjustment.

28. Of the initial payment of $4,400,000.00, $2,200,000.00 of it was paid at the closing in immediately-available funds via wire transfer to a bank account jointly designated by Plaintiffs. **Exhibit A,** ¶ 2(a). The remainder was paid to Plaintiffs in installments. The Working Capital Adjustment determined at Closing was $208,101.74, and it was due at closing. This amount was not timely paid.

29. The MIPA contained an indemnification clause, which provided the following regarding Plaintiffs' potential indemnification obligation to Orbital:

> The Company, Staffing, and the Sellers hereby agree to jointly and severally be responsible for, reimburse, indemnify, defend, and hold harmless the Buyer, from and against and in respect of any Adverse Consequences (as defined, below) (including those that if successful would constitute an indemnifiable claim), incurred or suffered by the Buyer, whether or not involving a third party claim, that result from, relate to or arise out of any misrepresentation, breach of warranty or representation, or nonfulfillment of any agreement or covenant on the part of the Company, Staffing, or the Sellers under this Agreement, or from any misrepresentation in or omission from any certificate, schedule, statement, document or instrument furnished by the Company, Staffing or the Sellers or any of their representatives to the Buyer pursuant hereto or in connection with the negotiation, execution or performance of this Agreement.

**Exhibit A,** ¶ 7(b).

30. For purposes of the indemnification clause, "Adverse Consequences" were defined as:

> …all actions, suits, proceedings, hearings, investigations, charges, complaints, claims, demands, injunctions, judgments, orders, decrees, rulings, damages, dues, penalties, fines, costs, amounts paid in settlement, liabilities, obligations, taxes, liens, losses, reimbursement, recapture, adjustment, overpayment, penalty, assessment or charges, expenses, and fees, including court costs and attorneys' fees and expenses of whatever kind or nature, in law, equity, or otherwise, whether known or unknown, suspected or unsuspected, and whether or not concealed or

hidden, which have existed or exist at any time up to and including the Closing Date.

**Exhibit A,** ¶ 7(c).

    31.    The MIPA limited the contours of indemnification as follows:

d.  Indemnification Limits

    i.  Other than in the case of fraud or intentional misrepresentation, the maximum amount of indemnification for which either Buyer, on the one hand, or Sellers, on the other hand, will be obligated to indemnify the other Party pursuant to this Agreement will be the Consideration; and, if Sellers' are liable for indemnification, each Seller shall be jointly and severally liable to Buyer for any such indemnifiable costs;

    ii.  Notwithstanding the foregoing, however, the Buyer shall not be entitled to any indemnification pursuant to this Agreement until the cumulative amount of all of Buyer's indemnifiable losses exceeds Fifty Thousand and 00/100 ($50,000.00) Dollars (the "*Basket*"), in which case Sellers shall be liable for all of Buyer's indemnifiable losses, including the Basket, up to Consideration.

**Exhibit A,** ¶ 7(d)(i), (ii) (emphasis in original).

    32.    The indemnification provisions did not delineate any actual or potential obligation for Plaintiffs to also indemnify Orbital for attorneys' fees and/or costs.

**B.**    **The *Strawn* Collective Action Lawsuit**

    33.    **On January 29, 2021, Tommy Strawn filed a filed a lawsuit against YCI Methanol One, LLC in the Southern District of Texas, alleging overtime-based violations of the Fair Labor Standards Act ("FLSA"). Exhibit D, *Strawn* Complaint.**

    34.    **On October 12, 2021, Orbital made a demand for indemnity in the *Strawn* litigation.**

    35.    **On October 30, 2021, Plaintiffs and Orbital executed a Joint Defense Agreement ("JDA") governing their relationship in defending the *Strawn* litigation.**

7

36. **The Parties agreed Orbital would keep Sellers apprised of the status of the litigation, including any substantive court rulings, hearings, settlement conference, and offers of settlement. The Parties further agree that before any settlement is executed in excess of $50,000.00, that the Parties shall provide Sellers with reasonable notice of the settlement terms and amounts.**

37. **On October 6, 2023, Orbital made demand upon Sellers for the full amount of costs, expenses and fees incurred in the *Strawn* litigation.**

C.  **The *Ledet* Collective Action Lawsuit**

38. On September 15, 2022, Lance Ledet filed a collective action lawsuit against H&K Engineering, LLC and Orbital Engineering, Inc. in the Western District of Pennsylvania, alleging overtime-based violations of the Fair Labor Standards Act ("FLSA"). **Exhibit B,** *Ledet* Complaint.

39. The class definition set forth in the Complaint included "[a]ll current or former employees of H&K and/or Orbital who were paid straight time for overtime in the past 3 years (The "Putative Class Members."). **Exhibit B, ¶** 17.

40. The damages at issue in the *Ledet* case therefore implicated a timeframe after the Plaintiffs had sold H&K Engineering to Orbital.

41. On September 22, 2022, and October 11, 2022, Plaintiffs and Orbital executed a Joint Defense Agreement ("JDA") governing their relationship in defending the *Ledet* litigation.

42. Pursuant to the JDA's express terms, Orbital was to keep the Plaintiffs apprised of the defense strategies in the *Ledet* litigation.

43. In no uncertain terms, the JDA stated that:

> …the Parties agree to keep Sellers apprised of the status of the litigation, including any substantive court rulings, hearings, settlement conference, and offers of settlement. The Parties further agree that before any settlement is executed in excess

of $50,000.00, that the Parties shall provide Sellers with reasonable notice of the settlement terms and amounts.

### D.     Orbital Shut H&K group Out of the Settlement Process In Both the *Strawn* and *Ledet* Litigation.

44.     Orbital failed to involve **and keep** Plaintiffs apprised as to the status of **either the** *Strawn* **or** *Ledet* lawsuits, despite its express obligation to do so.

45.     On March 30, 2023, Plaintiffs acknowledged that pursuant to their indemnification obligations under the MIPA, whose effective date was January 1, 2021, they were responsible for Adverse Consequences (as that term was defined in the MIPA) above $50,000.00 but in no event more than the Consideration (as that term was defined in the MIPA).

46.     Plaintiffs made it clear that they would not indemnify Orbital for any claims, damages, attorneys' fees, etc. associated with an occurrence or allocation of damages after January 1, 2021, and would not be obligated under the MIPA to indemnify Orbital in full for any settlement with the *Ledet* Plaintiff(s) or associated legal fees.

47.     Thereafter, on April 26, 2023, counsel for Orbital provided Plaintiffs' counsel with the *Ledet* Plaintiff's damages calculation regarding back wages owed in connection with a mediation scheduled for April 28, 2023.

48.     In response, Plaintiffs' counsel explained that Plaintiffs were not in a position to ascertain the appropriateness of a settlement amount because Orbital had not kept them apprised of the case's defense as the JDA required.

49.     Plaintiffs' counsel specifically requested that any settlement and its terms be provided prior to effectuating the settlement.

50.     Instead, Orbital's counsel emailed Plaintiffs' counsel on May 2, 2023, stating that it had "reached an agreement in principle" with the *Ledet* Plaintiff.

9

51. Thereafter, Plaintiffs' counsel requested to review a draft of the settlement agreement on three (3) separate occasions.

52. Finally, on May 24, 2023, Orbital responded, contending that Plaintiffs had no right to participate in the defense of the *Ledet* action, nor was Orbital required to keep Plaintiffs apprised as to the status of the suit. Only at that point did Orbital transmit the settlement draft to Plaintiffs.

53. On June 20, 2023, Plaintiffs' counsel again followed up with Orbital's counsel regarding the status of settlement, reiterating Plaintiffs' position that under the MIPA and the JDA, Plaintiffs had the right to the status of the discussions and input into that settlement (as the appropriateness of the settlement, defense, and tender was at issue).

54. Instead, Orbital unilaterally entered into a Settlement Agreement with Mr. Ledet and the proposed Collective, which was approved by the Court.

55. On June 23, 2023, Orbital's counsel provided a formal demand for indemnification to Plaintiffs' counsel, requesting payment for the following:

   i. $1,050,000.00 owed and to be paid by Orbital in accordance with the *Ledet* Settlement Agreement;

   ii. $49,678.91 owed and to be paid by Orbital for employer payroll taxes; and

   iii. $247,089.00 in legal fees, costs and expenses incurred by Orbital in connection with the *Ledet* suit.

**Exhibit C** (Indemnification Demand).

56. **For the first time, Orbital made demand for indemnification in the *Strawn* matter on October 6, 2023, and added its claim for breach of contract based on the indemnification claim in the *Strawn* matter on October 25, 2023, with the filing of its Counter-Claim.**

10

## VI. RELIEF SOUGHT

57. Under both Article 1871 of the Louisiana Code of Civil Procedure and the Federal Declaratory Judgment Act, Plaintiffs are entitled to bring a declaratory judgment action to have a court declare rights and other legal relations as to whether or not relief is or could be claimed. *See* La. C.C.P. Art. 1871; *see also* 28 U.S.C. § 2201; and Fed. R. Civ. Proc. 57.

### A. Louisiana Law Should Apply to the Instant Dispute.

58. Plaintiffs re-allege and incorporate all preceding paragraphs of this Complaint.

59. Louisiana law should apply to the instant dispute between the Parties due to the choice of law provision in the MIPA. *O'Hara v. Globus Medical, Inc. and Vortex Spine, LLC,* 2014-1436 (La. App. 1 Cir. 8/12/15); 181 So.3d 69, 80, *writ denied,* 182 So. 3d 939 (La. 11/30/15). (citing La. Civ. Code Art. 3540; *THH Properties Ltd. Partnership v. Hill,* 41,038 (La. App. 2 Cir. 6/2/06); 930 So.2d 1214, 1218) ("Under Louisiana law, it is generally acceptable for contracting parties to make a choice of state law that will govern the agreement between them. That choice will be given effect, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under La. C.C. art. 3537.").

60. Moreover, Louisiana is the state "whose policies would be most seriously impaired if its law were not applied to [the issues here]." La. Civ. Code Art. 3537.

### B. Pursuant to the MIPA's Terms, Plaintiffs Are Not Required to Indemnify Orbital In Connection With the *Strawn* or *Ledet* Settlements.

61. Plaintiffs re-allege and incorporate all preceding paragraphs of this Complaint.

62. "An indemnity agreement is a specialized form of contract. *Meloy v. Conoco, Inc.,* 504 So.2d 833, 839 (La. 1987). It is the terms of the indemnity agreement which govern the obligations of the parties. *Meloy v. Conoco, Inc.,* 504 So.2d at 839; *Sandbom v. BASF Wyandotte*

11

*Corporation,* 618 So.2d at 1022." *Tassin v. Golden Rule Ins. Co.,* 94-0362 (La. App. 1 Cir. 12/22/94); 649 So.2d 1050, 1057, *reh'g denied,* (2/2/95).

63. The MIPA's terms make it clear that Plaintiffs are only obligated to indemnify Orbital for adverse consequences arising from any "misrepresentation, breach of warranty or representation, or nonfulfillment of any agreement or covenant on the part of the Company, Staffing, or the Sellers under this Agreement, or from any misrepresentation in or omission from any certificate, schedule, statement, document or instrument furnished by the Company, Staffing or the Sellers or any of their representatives to the Buyer pursuant hereto or in connection with the negotiation, execution or performance of this Agreement." **Exhibit A,** ¶ 7 (b) (emphasis supplied).

64. Plaintiffs made no such misrepresentations or omissions, nor did they fail to fulfill any agreement in connection with the negotiation, execution, or performance of the MIPA.

65. Notably, at the time of the sale of Plaintiffs' Membership Interest in H&K Engineering and H&K Staffing to Orbital, Plaintiffs were not aware of any actual or potential claims related to the companies' operations.

66. Specifically, Plaintiffs were not aware of Mr. Ledet's actual or potential claims.

67. Therefore, Plaintiffs are not required to indemnify Orbital for **the *Strawn* or** *Ledet* settlements because neither stemmed from the negotiation, execution, or performance of the MIPA. *See Kenworth of South Louisiana, LLC v. Bristow,* 2009-1178 (La. App. 3 Cir. 3/24/10); 34 So. 3d 380, 384.

**C. Even If Plaintiffs Were Required to Indemnify Orbital, This Obligation Would Not Extend Past January 1, 2021.**

68. Plaintiffs re-allege and incorporate all preceding paragraphs of this Complaint.

69. Given that the Plaintiffs had sold their Membership Interest in H&K Engineering and H&K Staffing as of January 1, 2021, even if Plaintiffs were required to indemnify Orbital, that obligation would cease after that date.

70. After January 1, 2021, Plaintiffs did not in any way control the companies' operations and cannot be held responsible for conduct related to them.

71. Plaintiffs are not obligated to indemnify Orbital for any of **the *Strawn* or *Ledet*** settlements for wages, penalties, attorneys' fees and costs that occurred after January 1, 2021, or that can be associated with time after January 1, 2021.

72. Any wages, penalties, attorneys' fees and costs from the *Strawn* **or** *Ledet* settlement that cannot be allocated to the time period after January 1, 2021, should be reduced on a pro-rata basis to the time period for which Plaintiffs were in control versus the time period Orbital was in control of H&K Engineering.

**D. Orbital Is Not Entitled to Recover Attorneys' Fees In Connection With the *Strawn* or *Ledet* Settlements.**

73. Plaintiffs re-allege and incorporate all preceding paragraphs of this Complaint.

74. For an indemnitor to be liable for attorneys' fees, the indemnification language must be "sufficient to infer the obligation." *Kinsinger v. Taco Tico, Inc.,* 03-622 (La. App. 5 Cir. 11/12/03); 861 So.2d 669, 673. ". . . [A]bsent some specific language in the indemnification contract, attorney fees and defense costs are not owed." *Kinsinger,* 861 So.2d at 673.

75. There is no such "specific language" in the indemnification provisions in the MIPA sufficient to infer that Plaintiffs were also obligated to indemnify Orbital for its attorneys' fees and/or costs stemming from either the ***Strawn* or *Ledet*** settlements.

76. Therefore, even if Plaintiffs were required to indemnify Orbital in connection with the *Strawn* **or** *Ledet* settlements, that obligation does not include payment of Orbital's attorneys' fees and/or costs.

### E. Orbital Breached Its Obligations to Plaintiffs Under the MIPA.

77. Plaintiffs re-allege and incorporate all preceding paragraphs of this Complaint.

78. In Louisiana, the essential elements of a breach of contract claim are "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Denham Homes, L.L.C. v. Teche Federal Bank,* No. 2014 CA 1576 (La. App. 1 Cir. 9/18/15); 182 So.3d 108, 119 (citing La. Civ. Code Art. 1994; *Favrot v. Favrot,* 10–0986 (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1108–09, *writ denied,* 11–0636 (La. 5/6/11); 62 So.3d 127).

79. Pursuant to the MIPA, Orbital was required to tender, and then tendered an initial payment in the amount of $4,400,000.00 to Plaintiffs in consideration for the sale of Plaintiffs' Membership Interest in H&K Engineering and H&K Staffing.

80. Orbital failed to timely pay Plaintiffs $208,101.74 of the positive Working Capital Adjustment due under the MIPA at closing, despite its clear contractual obligation to do so, and was in default under the MIPA. Orbital belatedly paid the amount on January 13, 2022.

81. Orbital also defaulted on the Post Closing Receivables Collection payment to Plaintiffs in the known amount of $800,962.00.

82. After the Plaintiffs' July 2021 request for payment of Post Closing Receivables collected, Orbital ceased sharing or providing with Plaintiffs any detailed financial information related to accounts receivable matters. Plaintiffs conservatively estimate that post July 2021 Account Receivable related matters due to Plaintiffs equals approximately $195,000.00.

83. The failure of Orbital to pay these amounts resulted in damage to the Plaintiffs in the amount of $995,962.00, plus interest.

84. Orbital has breached its obligations to Plaintiffs under the express terms of the MIPA.

85. Orbital is obligated under the MIPA to pay to Plaintiffs the outstanding sum of $995,962.00 due under the MIPA, plus interest.

## VII.  PRAYER

**WHEREFORE,** Plaintiffs pray that this Court enter the following relief:

(a) Enter an Order and Declaratory Judgment against Orbital declaring that (1) Louisiana law applies to the dispute between Plaintiffs and Orbital; (2) Orbital is not entitled to indemnification from Plaintiffs under the terms of the MIPA; (3) even if Plaintiffs were required to indemnify Orbital, those obligations do not extend past January 1, 2021 and should be prorated; and (4) Orbital is not entitled to indemnification for its attorney's fees and costs from Plaintiffs;

(b) Enter Judgment against Orbital that it breached its contractual obligations to Plaintiffs and is liable unto Plaintiffs in the sum of $995,962.00, plus interest;

(c) Award Plaintiffs costs and reasonable and necessary attorneys' fees as such an award would be equitable and just; and

(d) Grant any such other and further necessary relief which this Court deems just and proper.

| | |
|---|---|
| January 15, 2024 | */s/ Eric R. Miller* <br> **ERIC R. MILLER** <br> Louisiana State Bar Number 21359 <br> THE KULLMAN FIRM <br> 4605 Bluebonnet Blvd., Suite A <br> Baton Rouge, Louisiana 70809 <br> Telephone: (225) 906-4250 <br> Facsimile: (225) 906-4230 <br> Email: EM@kullmanlaw.com <br> <br> **MINA R. GHANTOUS** <br> Louisiana State Bar Number 38627 <br> THE KULLMAN FIRM APLC <br> 1100 Poydras Street, Ste. 1600 <br> New Orleans, LA 70163 <br> Telephone: (504) 524-4162 <br> Facsimile: (504) 596-4114 <br> Email: MRG@kullmanlaw.com <br> <br> **COUNSEL FOR PLAINTIFFS** |

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January, 2024, a copy of the foregoing was served upon all counsel of record by electronic mail via the Court's CM/ECF filing system.

*/s/ Eric R. Miller*
**ERIC R. MILLER**